GEORGE A. EDDY, et al., v. N. E. WEAVER, et al.

1. CASE-MADE —*Evidence* — *Statement in Case Itself.* Where a case is made and settled for the supreme court, and the party making it desires that it shall be shown that the case contains all the evidence that was introduced on the trial, a statement to that effect should be inserted in the case itself, and not in the certificate of the judge who settles the case.

2. EXECUTION CREDITORS, *When Liable to Attaching Creditors.* Where attachments and executions are levied upon the same property, by the same officer, and the attachments are levied first, and have priority, and the execution creditors cause the officer to sell the property on their executions to several hundred different persons, and in small lots, and to pay the proceeds of the sale to themselves, *held,* that they are liable to the attaching creditors for so much of the proceeds as will satisfy the judgments rendered in favor of the attaching creditors.

*Error from Harvey District Court.*

THIS action was tried by the court below without a jury, and on April 6, 1885, the court made findings of fact and a conclusion of law as follows, to wit:

"FINDINGS OF FACT.

"Prior and up to December 4, 1877, one William Hall Mitchell was engaged in the business of retailing drugs, and so forth,

at Larned, Kansas, and was largely in debt and wholly insolvent. On the 18th day of October, 1887, Stiefel & Ney recovered a judgment against Mitchell for $56, and costs of suit. On December 4, 1877, John A. Moore commenced a civil action in attachment against Mitchell for $105, before F. A. A. Neals, a justice of the peace of Larned township, Pawnee county, Kansas, and at the same time Weaver & Bill, plaintiffs herein, commenced two actions before the same justice of the peace, one for $235, and one for $205, and caused orders of attachment in said actions to be issued; all of said attachments in said three suits were placed in the hands of L. P. Elliott, a constable of Larned township, in said county and state, and were by said constable each and all levied upon the stock of drugs and medicines of Mitchell. Said John A. Moore and Weaver & Bill at said time were each and all nonresidents of Pawnee county, Kansas, and were each and all residents of Lyon county, Kansas, and each and all of them failed to give a cost bond in said cases, except the bonds given for attachments, until December 8, 1877, at which time they filed a cost bond in each of said cases; each and all of said attachments so issued were levied upon said stock of drugs and medicines on December 4, 1877; each of said cases was set for trial, and said attachments made returnable on December 7, 1877, at which time Mitchell appeared before said justice of the peace, and filed an affidavit in due form under section —, chapter 81, Compiled Laws of Kansas, for a change of venue, which application was by said justice of the peace overruled; said causes were continued for trial until December 8, 1877, at 10 A. M., at which time the same were on the application of Mitchell continued for trial until January 10, 1878. On January 8, 1878, said Bill, one of plaintiffs, paid Mitchell about $25 to confess judgment in all said cases for the amounts claimed therein, and waive all errors and irregularities in said suits, which Mitchell did in writing, having consented before said justice that the continuance should be set aside and each of said cases called for trial. Mitchell had no defense to the merits of either of said causes of action, and was justly indebted to Weaver & Bill and J. A. Moore the several amounts for which he confessed judgment, and the said Bill paid said amount to save the expenses the parties would necessarily be at if the suits were tried. On the 8th day of December, 1877, Mitchell, with George A. Eddy, Jerry Toles, T. H. Edwards, and Nelson Adams, as sureties, entered into a forthcoming bond to John A. Moore and Weaver & Bill in the sum of $2,400,

conditioned that the property so attached in said actions, or the sum of $1,100, its appraised value thereof, should be forthcoming to answer the judgments in said actions, which bond was taken and approved by L. P. Elliott, constable, on December 8, 1877, a true copy of which bond is attached to the petition herein; and the constable made the following return on each of said orders of attachment:

"'Surrendered the property attached in this case on the execution and delivery to me of bond, a copy of which is herein attached, and marked 'Exhibit A,' February 8, 1878.—L. P. ELLIOTT, Constable.'

"'Which said bond was taken and approved by said constable on December 8, 1878.—L. P. ELLIOTT, Constable.'

"Said bond was procured to be issued by George A. Eddy, in order that the execution issued in his favor, as hereinafter set forth, might be levied upon said attached property, and that while the bond purported to be made by Mitchell as principal and the others as sureties, it was as a matter of fact procured and executed by George A. Eddy for the purpose aforesaid, of which the plaintiff at the time had no information or knowledge; on December 4, 1877, an execution was issued upon the judgment of Stiefel & Ney to the said Elliott; on December 4, 1877, George A. Eddy commenced before a justice of the peace at Larned three actions against William Hall Mitchell, one to recover the sum of $81, one to recover the sum of $219.50, and one to recover the sum of $88.50; and on the same day Gillett & Co. commenced an action against Mitchell for the sum of $163, and Gillett, Armstrong & Kelly commenced an action against Mitchell for the sum of $155, and Myers & Myers commenced an action against Mitchell for the sum of $165; and also on the same day Adam Brewer commenced an action for $77.50; and also on the same day J. A. Blackman commenced an action against Mitchell for the sum of $84.52. In each of said actions an order of attachment was issued and delivered to the constable, Elliott, who levied each of them upon a stock of goods, wares and merchandise belonging to Mitchell, then and at that time in his possession under the levies made upon the orders of attachment issued in the cases of Weaver & Bill and John A. Moore against Mitchell; and all orders of attachment received by constable Elliott, other than those in favor of Weaver & Bill and John A. Moore, were levied upon such property subsequent to and subject to the orders of attachment levied thereon in favor of Weaver & Bill and John A. Moore; all of the orders of attachment above referred to, other than those in favor of Weaver & Bill and John A. Moore, were return-

able and were returned on December 8, 1877, at which time each of the actions in which they were issued was set for trial, and said orders of attachment were then released and discharged. On the eighth day of December, 1877, judgments were rendered in each of the actions commenced against Mitchell as herein stated for the amounts claimed and costs, except in the two actions commenced by Weaver & Bill and in the action commenced by John A. Moore; and upon said day an ordinary execution was issued upon each judgment so rendered, and placed in the hands of constable Elliott, prior to the delivering to him the forthcoming bond. After the execution and delivery and approval of the forthcoming bonds and the return made by the constable upon the orders of attachment in favor of Weaver & Bill and John A. Moore as aforesaid, William Hall Mitchell demanded of constable Elliott the delivery to him of the property which had been attached and for the delivery of which the forthcoming bond had been executed, which demand the constable Elliott, at the instance and request of the defendants Nelson Adams and George A. Eddy, refused and failed to comply with, and he, the constable Elliott, at the special instance and request of the defendants Nelson Adams and George A. Eddy, as soon as he had approved the forthcoming bond and made return on said orders of attachment in favor of Weaver & Bill and John A. Moore, levied upon the property of Mitchell which he had taken under the orders of attachments last named, and to release which said forthcoming bond had been given, an execution in favor of George A. Eddy for the sum of $90, and also levied thereon, subject to such first levy, an execution in favor of George A. Eddy, for the sum of $91, and also levied thereon, subject to said two first executions, another execution in favor of the said George A. Eddy, for the sum of $225, and also levied thereon, subject to said three other executions, an execution in favor of Gillett & Co., for the sum of $175, and also levied thereon, subject to said four executions, an execution in favor of Armstrong & Kelly for the sum of $165, and also levied thereon, subject to the levies of said five executions mentioned, all other executions in his hands, amounting to about the sum of $327.

"The levies of said executions were made in the order stated, about one-half hour after the execution of said forthcoming bond and after the return of said orders of attachment in favor of Weaver & Bill; afterward, and on the 23d and 24th days of December, 1877, at the special instance and request of the

defendants George A. Eddy and Nelson Adams, the constable Elliott, having duly advertised the same, sold at public auction the goods so advertised for the sum of ten hundred and fifty dollars, on the executions so levied thereon as aforesaid, in the order in which they were levied as aforesaid, and applied the proceeds at the special instance and request of the defendants George A. Eddy and Nelson Adams, as follows, to wit: He, the said constable Elliott, paid of said proceeds to the defendant George A. Eddy seven hundred and eight dollars on the claim that he, the said George A. Eddy, claimed to represent, to wit, three claims of his own, and the claim of Gillett & Co., and the claim of Gillett, Armstrong & Kelly; and he paid to the said Nelson Adams on the claims of Myers & Myers, Adam Brewer and J. A. Blackman, one hundred and fifty dollars, and the balance he kept for his own fees and the fees of the justice of the peace; the defendant George A. Eddy was present at said sale and assisted the constable as his clerk, and received the money when paid in at said sale. Nelson Adams paid of the proceeds received by him all he received except forty dollars, to the parties for whom he received it. Eddy, Toles, Edwards and Adams signed said forthcoming bond under the belief that the attachments of Weaver & Bill and John A. Moore were void on account of their being non-residents of Pawnee county, and no cost bonds having been given when their actions were commenced; said parties, believing said attachments to be void, believed that by giving such bond they could get the attachments returned, and having their attachments ready in the hands of the constable, could have the property attached sold to satisfy their executions, and thus obtain a preference over Weaver & Bill and John A. Moore in the collection of their debts against Mitchell. On the 9th day of February, 1878, the justice of the peace before whom said judgments were rendered issued upon each of the judgments rendered in favor of Weaver & Bill and John A. Moore an order of sale directed to said constable Elliott, commanding him to sell the property attached in said action, or so much thereof as was necessary to satisfy each of said judgments and costs, and apply the proceeds to the satisfaction of said judgments and costs; the constable returned said orders of sales with an indorsement upon each one of them to the effect that he had sold said attached property under the executions under which it is herein stated that he sold the same. On the 11th day of February, 1878, and after the return of said orders of sale, ordinary executions were is-

sued upon each of said judgments in favor of Weaver & Bill and John A. Moore, to said constable Elliott, who afterward returned each of said executions with an indorsement thereon of 'No property found in my county whereon to levy this execution.' Thereafter, Weaver & Bill commenced an action against the defendants herein upon said forthcoming bond. John A. Moore, having been made defendant, filed a cross-petition in said action. Said action was finally dismissed, and a judgment for costs therein rendered against Weaver & Bill and John A. Moore; and the matters and things determined in said action are shown fully by the opinion of the supreme court of the state of Kansas in the case of *John A. Moore, et al., against George A. Eddy, et al.*, reported in 23 Kas. 114.

"On the 10th day of December, 1879, demand was duly made in writing upon each of the defendants herein to return said goods so sold on execution, or to pay the proceeds of such sale to the successor in office of F. A. A. Neals, justice of the peace; to have said goods sold to satisfy the judgments of Weaver & Bill and John A. Moore, or to have the proceeds applied to the payment of said judgments, which demand the defendants and each of them wholly failed, neglected and refused to comply with in whole or in part. William Hall Mitchell is, and ever since the rendition of said judgment has been wholly insolvent.

"Said constable Elliott has been ever since the rendition of said judgment wholly insolvent, and is and has been ever since the sale of said goods as herein stated a non-resident of the state of Kansas, and the bond executed by him to qualify as constable is and has been wholly insufficient to protect the plaintiffs. The goods of William Hall Mitchell sold at such sale as herein stated were sold to several hundred different persons, in small lots. In each and all proceedings had subsequent to the execution of said forthcoming bond, were had by the defendants George A. Eddy, Nelson Adams, and constable Elliott, for the purpose and with the intent of defeating the prior attachment lien of plaintiffs, so that the said Eddy and the other parties might secure a preference over Weaver & Bill and John A. Moore in the appropriation of the goods of Mitchell to the payment of their claims, and to this end said parties worked together. Neither Weaver & Bill nor John A. Moore had any knowledge or information of the fact that said attached property had not been returned to William Hall Mitchell on the execution of said forthcom-

ing bond, until the trial of the action brought on said forth-coming bond, at the October, 1878, term of the Pawnee county district court, when they for the first time learned that said attached property had not been returned to Mitchell on the approval of said bond. The defendant George A. Eddy took the proceeds of said sale received by him and visited Weaver & Bill and John A. Moore and offered to pay them forty cents on the dollar of their claims out of such proceeds, which they refused to accept.

"The court further finds that each of the exhibits attached to plaintiffs' petition is true, and that the justice of the peace before whom said actions were pending, did, on the 8th day of January, 1878, render a judgment in favor of Weaver & Bill in one of said actions for the sum of $205 damages and $10 costs, and for the sum of $235 damages and $10 costs in the other of said actions; and that each of said judgments was declared to be by the terms thereof a lien upon the prop-erty shown to have been attached in said action by the return on the order of attachment issued therein, and said attached property was ordered to be sold to satisfy such judgment; that each of the attachments issued in the cases commenced by the plaintiffs as aforesaid continued to be a lien upon the property levied upon thereunder until the same was sold under said execution, and upon such sales said attachments became a lien upon all the proceeds of such sale which came into the hands of the defendants George A. Eddy and Nelson Adams, until such judgments were rendered in favor of the plaintiffs, when such attachment liens became judgment liens upon such proceeds, and that the plaintiffs had the right to have such proceeds in the hands of the defendants George A. Eddy and Nelson Adams applied upon such judgments to the satisfac-tion thereof, to the amount necessary to satisfy the same; that on the 10th day of December, 1879, when demand was made as aforesaid, there was due to the plaintiffs upon said judg ments in the aggregate the sum of $521.68; that at said time of said demand the defendants by their refusal to accede to said demand converted said funds to their own use and destroyed the lien of the said judgments of said plaintiffs thereon to the damage of said plaintiffs at said time in the sum of $521.68.

"CONCLUSION OF LAW.

"The plaintiffs are entitled to recover from the defendants, George A. Eddy and Nelson Adams, the sum of $521.68, with interest from December 20, 1879."

Thereupon the court adjudged that the plaintiffs recover from the defendants $714.87.   The defendants bring the case to this court.

*Lucien Baker*, and  *W. C. Hook*, for plaintiffs in error.

*C. N. Sterry*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Pawnee county, by N. E. Weaver and D. S. Bill, partners as Weaver & Bill, against George A. Eddy, Nelson Adams, William A. Brigham, and John T. Moore. Afterward the case was removed to Harvey county, where it was tried before the court, without a jury.   The court made special findings of fact and a conclusion of law, and upon such findings and conclusion rendered judgment in favor of the plaintiffs and against Eddy and Adams for $714.87, and costs.   Eddy, Adams, and Brigham, as plaintiffs in error, have brought the case to this court, making Weaver & Bill defendants in error.

The first point made by the plaintiffs in error is, that the findings of fact are not sustained or authorized by the evidence. This seems to be true with respect to some of the findings; but the defendants in error claim that the case as brought to this court does not purport to contain all the evidence introduced on the trial below, and therefore that it cannot be known whether the findings of fact are sustained by sufficient evidence, or not.   It is true that the case proper does not purport to contain all the evidence, but the judge of the court below, at the time of settling and signing the case, certified that the case "contains all the testimony offered or received on the trial."   This brings us to the question whether the trial court, when settling a case for the supreme court, can properly insert in a certificate thereto, other facts and statements than those already inserted in the case, and such facts . and statements as are not necessary, for the purpose of merely showing that the case has been properly settled.   We can

answer readily that such a thing could not be done in the absence and without the knowledge and consent of the parties not making the case. In the case of *Bartlett v. Feeney*, 11 Kas. 594, 602, it was held that, under the circumstances of that case, the statement of a fact which was not inserted in the case-made, nor entered in the proceedings of the court, but which was merely certified to by the judge at the time of settling and signing the case, would not be considered by the supreme court. In the case of *Brown v. Johnson*, 14 Kas. 377, it was held that "the signature of a judge to a case-made, or a bill of exceptions, imports the truthfulness of the preceding statements in such case or bill, nothing more; and we must look to those statements to see whether all the testimony is preserved or not." And in the nature of things, this must as a rule be so. Where a case, when it is served upon the adverse party, does not purport to contain all the evidence, he has no further interest in the matter than to know that what the case does contain is correct. Usually in such cases, it is a matter of entire indifference to him as to how much or how little of the evidence is contained in the case; and if what is contained in the case is correct, he has no need to suggest any amendments to the case with regard to the evidence, although the case may not contain one-half, or indeed any of the evidence. Usually, when a party making a case for the supreme court desires that it shall be shown that the case contains all the evidence, the case itself as served upon the adverse party should contain a statement to that effect, so as to give the adverse party an opportunity to suggest amendments, if he thinks the statement untrue, either by striking out the statement or by inserting such other evidence as he may believe has been omitted; and thereby make the case speak the truth. It is

1. Case containing all the evidence — case itself to show.

the case itself, and not the certificate of the judge, which should show whether all the evidence introduced on the trial is contained in the case or not. All that the judge in settling a case for the supreme court can properly do in the absence of the parties, and all that he need to do in any case, is to examine both the case as it

has been made and served, and the amendments thereto as suggested by the adverse party, and then to allow all of each so far as the same are correct, and so far as the amendments have relation to the case as made and served; and also to correct any erroneous statements made in either the case or the amendments, so that the case when settled shall speak the truth. And when the case is thus settled, all that the judge need further to do is to indicate the same in some manner upon the case, and sign his name thereto; generally, however, it would be better for the judge to make a formal showing of the settlement of the case, as by a formal certificate of the same, giving the date of the hearing and of the settlement, the names of the parties appearing, a statement as to whether those of the parties not appearing had sufficient notice of the time and place of the settlement; and the judge might also indorse upon the case an order for the clerk to properly attest the same with his signature and the seal of the court. Nothing else is necessary to be done. But suppose that both parties are present, and the court does in fact insert either in the case itself or in his certificate thereto, new propositions not necessary, merely to make the case, as it was originally made and served, or the amendments thereto as originally suggested, speak the truth: then are the parties bound by such new propositions so inserted? This probably depends upon the further question whether the case is settled prior or subsequently to the time fixed for making and serving the case, and for the suggestion of amendments. If settled before that time the new propositions might very properly be inserted, but if afterward, then they could not properly be inserted, for to insert them at that time would be equivalent to making a new case for the supreme court, after the time for making the same had elapsed, which cannot be done. (*Ætna Life Ins. Co. v. Koons*, 26 Kas. 215; *Dodd v. Abram*, 27 id. 69.) This case was settled long after the time had elapsed for making and serving the case and for suggesting amendments; hence the statement contained in the certificate of the judge, that the case "contains all the testimony offered and received," is improper.

As this case comes to this court, we think we must decide the same upon the theory that it is not sufficiently shown that all the evidence has been brought to this court, and therefore upon the theory that the findings of fact as made by the trial court are absolutely correct, although some of them seem from the evidence brought to this court not to be sustained by sufficient evidence. We would say, however, that we think this works no injustice, for we think that not only the findings, but also the evidence, will sustain the judgment that was actually rendered by the court below.

The material facts of the case seem to be substantially as follows: In two suits before a justice of the peace of Pawnee county, Weaver & Bill, as plaintiffs, obtained attachments which were levied upon the property of William H. Mitchell, who was the defendant in these two suits. Weaver & Bill were non-residents of the county, and gave no security for costs, but it is not claimed in this court that this renders the attachments void. Afterward, Mitchell, Jerry Toles, George A. Eddy, T. H. Edwards, and Nelson Adams, for the purpose of procuring the possession of the attached property, gave to the constable, L. P. Elliott, a forthcoming bond; but the property was never delivered to them nor to anyone else under the bond, but was retained by the constable; hence the bond was void for want of consideration. (*Eddy v. Moore*, 23 Kas. 113.) At the same time Eddy and Adams held judgments against Mitchell, and they procured executions to be issued upon these judgments, and to be levied upon the same property by the same constable; and the property was afterward sold by the constable under these executions to several hundred different persons, in small lots, for the aggregate sum of $1,050; and the proceeds of the sale, after paying costs, were paid to Eddy and Adams, and none of the proceeds were paid to Weaver & Bill. Afterward, Weaver & Bill procured judgments in their suits, and also procured orders to be made by the court that the attached property be sold to satisfy their judgments, but as the property had already been sold to satisfy the executions of Eddy and Adams, the property could not again be sold.

The question now arises, are Eddy and Adams liable to

Weaver & Bill for the proceeds of the sale of the said property, up to the amount of Weaver & Bill's judgments, to wit, $521.68? We think this question must be answered in the affirmative. Eddy and Adams, with a full knowledge

**2. Execution creditors, when liable to attaching creditors.** of all the facts, caused their executions to be levied upon the property, the property to be sold under the executions, and scattered among hundreds of people, and the proceeds of the sale to be paid to themselves. It is true they believed at the time that the attachments were void, and that Weaver & Bill had no lien upon the property, but in this they were mistaken, and the mistake was one of law, and not one of fact, and it cannot excuse them. They had a full and complete knowledge of all the facts, and ought to have known that Weaver & Bill had a prior lien upon the property, and that if they interfered with such lien, or impaired its efficacy in any respect, they did so at their peril. They claim, however, that by the suit of John A. Moore against Eddy, Adams, and others, upon the forthcoming bond, (reported in 23 Kas. 113,) the matter of this suit has become *res adjudicata*, and that by such suit Weaver & Bill are estopped from claiming anything in this suit. It is impossible to see why this should be so. That suit was prosecuted upon the bond, and nothing else. It was an action against the obligors of the bond for a breach thereof, and nothing else; and the parties in that suit, as well as the issues, were different from the parties and issues in this suit, and that suit can have nothing to do with this. It is also claimed as a defense, that the present action is barred by the statute of limitations, (Civil Code, § 18, subdiv. 3,) which provides that "an action for taking, detaining, or injuring personal property" shall be brought within two years, and not afterward. This is no such action, and this action is not barred by said statute, or by any other statute of limitations. The only statute of limitations that could operate in cases of this kind would be subdivision 2 of § 18 of the civil code; but that statute has not so operated as to bar this action.

The judgment of the court below will be affirmed.

All the Justices concurring.