State Journal Co. v. Commonwealth Co.

THE STATE JOURNAL COMPANY V. THE COMMONWEALTH COMPANY et al.

43   93
76   922
e76   924

1. CHATTEL MORTGAGE—Foreclosure—Receiver Appointed, When. Where a corporation engaged in carrying on a newspaper and printing office is greatly embarrassed by its debts, and there are dissensions existing between its officers likely to materially injure the value of its property, a receiver may be appointed in an action by a mortgagee for the foreclosure of his chattel mortgage and sale of the mortgaged property, where it appears that the condition of the mortgage has not been performed.

2. RECEIVER—*Irregular Appointment*—*Legal Costs, When no Contest of.* Where a receiver has been appointed by a district court in an action to foreclose a chattel mortgage, and there exists any irregularity in such appointment, if, upon the application of the defendant to vacate and set aside the appointment, the court orders the receiver to be discharged if the defendant will execute a good and sufficient bond to pay the judgment and costs of the case, and the defendant voluntarily executes the bond, in accordance with the order of the court, and has restored from the receiver all of the property in controversy, such defendant is in no situation to contest the legal costs of the receiver for any irregularity in his appointment.

3. DEFENDANT, *When Entitled to Jury.* In an action upon a promissory note secured by a chattel mortgage, where a personal judgment against the defendant is prayed for, and the execution of the note is denied under oath, the defendant is entitled to a jury, and to refuse a demand therefor is error.

### Error from Shawnee District Court.

ON April 11, 1885, the *Commonwealth Company* brought its action against the *State Journal Company* and others, in the superior court of Shawnee county, to recover $5,960.34 and interest upon three promissory notes, and also to foreclose two chattel mortgages covering the newspaper office, printing material, etc., of the Journal Company, given to secure the payment of the notes. The appointment of a receiver was also prayed for in the petition. Two of the notes were overdue at the time the action was commenced; one note for $2,216 was dated January 19, 1885, and payable five years after date. The chattel mortgage given to secure this note provided that the Journal Company should keep the property insured in the sum of $3,000 for the benefit of the mortgagee, and further provided that if the mortgagee should at any time "deem himself insecure," he had the right to declare the mortgage in default, and the note due and payable. The petition alleged a breach of these provisions of the mortgage, and therefore that this note was due and payable. At the commencement of the action, I. N. Baker was appointed receiver to take possession of the mortgaged property. He executed a bond, under the order of the court, in the sum of $5,000, for the faithful discharge of his duties. The Journal Company, under the

direction of Le Grand Byington, the vice-president and secretary of the company, filed an answer admitting all of the allegations in the petition.   Le Grand Byington was a party to the negotiation and transfer of the notes to the Commonwealth company.   On the 13th day of April, 1885, the Journal Company filed its motion to vacate and set aside the order appointing I. N. Baker receiver, for various reasons, among others, that Baker was an interested party; that the answer was collusive and fraudulent; that the notes were amply secured; that the Journal Company was solvent and in a condition to pay all its obligations.   On the 2d day of May, upon the motion of the Journal Company, the answer filed at the commencement of the action was stricken from the files of the court.   On the 5th day of May, the Journal Company filed its motion for a change of venue, which was granted by the superior court, and the case transferred and docketed in the district court of Shawnee county on the 7th day of May.   On the 9th day of May the Journal Company filed its answer, verified by S. N. Wood as business manager, denying the execution of the third note and the mortgage given to secure the same, and pleading payment of the notes set out in the first and second paragraphs of the petition, and setting up all the defenses claimed by the company.   On May 13 the motion to set aside the order appointing the receiver was heard.   The court overruled the motion, but ordered that I. N. Baker be removed, and Norris L. Gage be appointed receiver in his place, Baker to continue to act until Gage should qualify.   The court made the further order that, upon the filing of a sufficient bond by the Journal Company to satisfy any judgment which might be obtained in the action by the Commonwealth Company, the receiver should be discharged and all of the property, material, etc., in his possession be turned over to the Journal Company. It does not appear that Gage ever accepted or qualified as receiver.   On the 20th day of May the Journal Company presented to the court for its approval, a bond executed under the terms of the order of May 13th.   On the 21st day of May, 1885, the bond was approved.   Subsequently, on account

of the conduct of S. N. Wood, general manager of the Journal Company, in resisting the receiver in the discharge of his duties, the approval of the bond was set aside; but on the 1st day of June, 1885, the bond of the Journal Company was again approved, the receiver discharged, and the property, material, etc., in his possession turned over to the Journal Company. After this a supplemental answer and a reply thereto were filed. On the 8th day of March, 1886, the action was called for trial. The Journal Company demanded a jury; the court decided that it was not entitled as a matter of right to a jury, but ordered a jury to be impaneled, and then submitted to the jury certain specific questions of fact. After hearing the testimony, the instructions of the court and the argument of counsel, the jury answered as follows:

"1. How much do you find to be due on the notes made by Geo. W. Reed to Jennie E. Allen? A. $1,877.20.

"2. How much do you find to be due on the note of $2,216? A. Nothing.

"3. Do you find that the words 'State Journal Company by,' preceding the signature of W. N. Allen, president, were written on the mortgage of $2,216 after Allen signed the mortgage? A. Yes."

The special verdict was received by the court and the jury discharged. Afterward, and on the 20th of March, the Commonwealth Company filed its motion for judgment, *non obstante veredicto*. On the 21st of June, the court, without hearing further testimony, made and filed findings of fact embracing the issues in the case. Upon these findings of fact the court found the following conclusions of law:

"That the Commonwealth Company is entitled to recover on the two notes mentioned in the first and second conclusions of fact, the sum of $1,711.33, and to have the chattel mortgage made by George W. Reed to Jennie E. Allen of March 7, 1883, foreclosed; and the sum of $1,711.33 is declared a lien upon the mortgaged property, or the proceeds arising from the sale thereof; and that the money in the hands of the receiver arising from the sale of the property covered by the mortgage is to be applied and appropriated to the payment of this sum of money; and that the Commonwealth

Company is also entitled to have and recover from the Journal Company the sum of $2,477.23 on the note executed by the Journal Company to Seymour L. Byington, or order, January 19th, 1885, and is entitled to a decree foreclosing the chattel mortgage executed to secure the same by the Journal Company, and is entitled to have the property mentioned in said chattel mortgage sold and the proceeds applied to the payment of the judgment; and the sum of $2,477.23 is hereby declared to be a lien upon the property, or the proceeds arising from the sale thereof."

The court also rendered a decree finding the several sums of money to be liens upon the moneys in the hands of W. N. Allen, who, as receiver in another action against the Journal Company, had sold all the property of the company. He was ordered to apply sufficient of said moneys in his hands to the payment of the judgment. Subsequently the court rendered judgment in accordance with its conclusions of law. The *Journal Company* excepted to the rulings, orders and judgment of the court, and brings the case here.

*A. M. Mackey*, and *H. C. Root*, for plaintiff in error.

*David Overmyer*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: It is contended that the Commonwealth Company was not entitled to have a receiver appointed; therefore that the order making the appointment was erroneous, and that this company should be taxed with all the costs connected therewith. These costs aggregate over $2,000. As the receiver was appointed to receive and preserve the property, *pendente lite*, and as he was subsequently discharged upon a bond executed voluntarily to the Journal Company, this company is in no situation to contest the costs of the receiver. Upon the approval of the bond this company obtained all of the property described in the mortgages. The bond was not compulsory, but optional only. (*Babbitt v. Corby*, 13 Kas. 612; *Hoffmire v. Holcomb*, 17 id. 378; *Price v. Allen*, 39 id. 476.)

2. Receiver—irregular appointment—legal costs, when no contest of.

The bond stipulated that the Journal Company would satisfy any judgment or decree obtained in the action by the Commonwealth Company, together with all the costs.

In this connection, it is proper to observe that in view of the provisions of the chattel mortgages, the embarrassed condition of the Journal Company, and the trouble existing between the officers of the company, and considering that the value of its property, franchises, etc., largely depended upon the continuation of its business, the appointment of a receiver upon the allegations of the petition was almost a necessity. Section 254 of the code expressly provides that—

1. Chattel mortgage—foreclosure—receiver appointed, when.

"A receiver may be appointed in an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt, and in all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

If the Commonwealth Company had instituted an action against the Journal Company to recover the possession of the personal property covered by the chattel mortgages, as it might have done under its claim that the notes were due and unpaid, such a proceeding would have been more disastrous to the Journal Company than a receiver. It would have closed its office, and suspended the publication of its paper.

It is next contended that the Commonwealth Company had no authority to buy the notes or mortgages sued on; that this action was wrongfully instituted, and that the Commonwealth Company cannot recover upon the notes or mortgages. The question of *ultra vires* is not raised by the pleadings. The answer alleges the payment of two of the notes, and denies the execution of the third, and also denies that the parties signing the third note had any authority to do so from the Journal Company. The answer further alleges a large indebtedness due to the Journal Company from Le Grand By-

ington, who sold and transferred the notes, and also alleges a conspiracy between Le Grand Byington and the officers of the Commonwealth Company to take possession of and control the business of the Journal Company. There is an allegation in the answer "that the notes and mortgages were not purchased or obtained by the Commonwealth Company in the usual and ordinary course of business, or in good faith." None of the allegations of the answer set forth the purpose for which the Commonwealth Company was formed, and the answer does not raise any question as to the power of that company to buy or hold the notes and mortgages.

It appears from the testimony that Le Grand Byington purchased stock of the Commonwealth Company, and gave the notes and mortgages in payment therefor. The Journal Company had authority in carrying on its business to execute the notes and mortgages, and Byington had the right to purchase or hold the same. It is therefore doubtful whether the question of *ultra vires* has been properly presented by the pleadings, and whether the Journal Company, after receiving the benefit of the money for which the notes and mortgages were executed, could avoid payment to the Commonwealth Company, which received them for its stock.

It is finally contended that the trial court committed error in refusing to grant the Journal Company a jury trial. In *Clemenson v. Chandler*, 4 Kas. 558, it was decided that—

"In an action for a judgment on a note, and foreclosure of a mortgage securing it, and adjustment of the priority of liens, held that, on demand of defendant, the issues should have been sent to a jury, no reference of the case having been made."

In *Cavenaugh v. Fuller*, 9 Kas. 233, it was held that—

"In a suit on a note and mortgage, where a personal judgment against the defendant is sought, and the answer sets up payment of the note, and the reply traverses the allegation of payment, the defendant, in an issue made up, is entitled to a jury, and to refuse a demand therefor is error."

In *Bradley v. Parkhust*, 20 Kas. 462, it was said:

"So far as uniting two causes of action, in one of which

defendant may be entitled to a jury as a matter of right, and in the other not, we reply, that so far as the foreclosure is concerned it was long ago held in this court, that defendant was entitled to a jury, it being an action for the recovery of money, though not one for the recovery of money only. (*Clemenson v. Chandler*, 4 Kas. 558; Gen. Stat., p. 680, § 266.)"

In *Morgan v. Field*, 35 Kas. 162, it was stated:

"If issue had been joined upon the demand for money, a jury trial should have been awarded, as was decided in *Clemenson v. Chandler*, 4 Kas. 558; but no issue of fact was joined upon that question. The administrator of the estate of Dennis Morgan, deceased, made default. And the plaintiff in error did not deny the execution of the promissory note, nor question the right of the defendant in error to recover the amount claimed by him. The pleadings, therefore, admitted the allegations respecting the promissory note, and the right of defendant in error to recover judgment for the amount claimed, and left nothing to be tried except his right to have the mortgage foreclosed, and the lands sold in satisfaction of his claim."

Under the allegations of the answer, an issue was raised as to the payment of two of the notes, which entitled the Journal Company to a jury. The issue as to those notes was what amount, if anything was due thereon. This issue was submitted to the jury, and they found thereon $1,877.20. Therefore, as to two of the notes, the Journal Company has no complaint. The judgment rendered by the district court upon these two notes was $1,711.33. The court modified the verdict of the jury, but as the amount rendered was less than that returned by the jury, the Journal Company cannot object.

As to the note of January 19, 1885, for $2,216, the special verdict of the jury was set aside by the subsequent findings and judgment of the trial court. The court had authority to set aside the special verdict as to this note and grant a new trial, but the issues of fact joined upon that note should have been submitted again to a jury.

3. Defendant, when entitled to jury.

The counsel for the Commonwealth Company insists that

there is no motion for a new trial before the court for con-
sideration; also, that the record does not show any final judg-
ment or decree; and further, that the "case-made" has not
been properly settled so as to preserve all of the proceedings.
In all of these objections, counsel labors under a misappre-
hension. In the brief of the Journal Company there is an
intimation that a new trial is not desired, but a demand is
made for judgment upon the pleadings and testimony in favor
of that company. Upon the oral argument, the counsel of
the Journal Company stated if his company was not entitled
to judgment under the provisions of § 559 of the code, that he
insisted upon a new trial for the errors alleged in the record.
As a motion for a new trial was filed and overruled in the
court below, and the errors therein alleged have not been
waived, the question for a new trial is fairly presented. The
"case-made" contains the final judgment and decree of the
trial court. The district judge is not required in authenti-
cating a "case-made" to certify that it contains the pleadings,
testimony, or other proceedings. (*Eddy v. Weaver*, 37 Kas.
540 and the cases there cited.)

The judgment upon two of the notes for $1,711.33, is af-
firmed. The judgment for $2,477.23, on the note of January
19, 1885, is reversed on account of the refusal of the district
court to grant the Journal Company a jury trial upon the
issues framed upon that note.

The costs in this court will be divided.

All the Justices concurring.