MAAS *et al.* v. DUNMYER.

No. 2052, Okla. T.    Opinion Filed June 23, 1908.

(96 Pac. 591.)

1.    JURY—Right to Trial by—Equitable Issues.  In an action for foreclosure, where a defendant, against whom no money judgment is sought, by cross-petition in his answer sets up a defense and alleges a cause of action involving the application of equitable doctrines, and seeks relief that only a court of equity can give, such defendant is not entitled to a jury trial on the issues raised by his cross-petition.

2.    MORTGAGES—Bona Fide Mortgagees—Deeds—Capacity to Convey—Persons of Unsound Mind.  The deed of a person whose mind is unsound, but who is not entirely without understanding, made before his incapacity is judicially determined, is not void, but voidable, and passes title so that, when the grantee of such person mortgages the property to one who takes the mortgage in good faith for value without notice of the incapacity of the original grantor, the mortgagee thereby obtains a valid lien.

(Syllabus by the Court.)

*Error from District Court, Payne County; John H. Burford, Judge.*

Action by Mary E. Dunmyer against John Maas, by his guardian, C. W. Longan, and others.    Judgment for plaintiff, and Maas, by his guardian, brings error.    Affirmed.

*Geo. P. Uhl* and *C. L. Burdick,* for plaintiff in error.
*Lowry & Lowry,* for defendant in error.

HAYES, J.   On the 22d day of July, 1902, John Maas, plaintiff in error, represented in this proceeding by his guardian, C. W. Longan, was the owner of the fee title to 160 acres of land in Payne county, Okla.   On said date he conveyed said land by warranty deed to John J. Harsin, and said Harsin on same day by warranty deed conveyed said land to Nannie M. Rush.   On August 1, 1902, Nannie M. Rush and her husband borrowed of the defendant in error, Mary E. Dunmyer, the sum of $1,200, executing therefor their certain promissory note due in five years, with interest at 7½ per cent. per annum.   To secure the payment of said note Nannie M. Rush and her husband on August 1, 1902, executed to Mary E. Dunmyer a mortgage on said land, which mortgage was duly recorded on August 2, 1902.   Mary E. Dunmyer was a resident of the state of Nebraska, and made said loan through her agent at Stillwater, Okla., who was one Fletcher Brown.

Some months after the making of the mortgage to Mrs. Dunmyer, John Maas, in an action in the district court of Payne county, maintained in his own behalf, without a guardian, had the deeds from himself to Harsin and from Harsin to Nannie M. Rush canceled and set aside on the ground that he was feeble minded, and that fraud had been practiced upon him by the said parties in obtaining the deed from him to Harsin, and by the judgment of the court in that case said deeds were canceled and he was reinvested with the title to said land; but Mrs. Dunmyer was not made a party to that action.   Thereafter, and before the bringing of this suit, John Maas was adjudicated insane, and C. W. Longan was appointed guardian of his person and property, and default having been made in the payment of interest, under the conditions of said note and mortgage,   Mrs. Dunmyer declared the note due, and commenced this action against Nannie M. Rush and her husband Geo. S. Rush, on the note and to foreclose the mortgage.   She made John Maas a party defendant, alleging that he claims some interest in said land covered by the mortgage, which interest she alleges is inferior to her rights under the mortgage.   Judgment by default was taken upon the note against Mrs. Rush and her husband.   De-

fendant Maas, by his guardian, answered in three paragraphs. In the first and second paragraphs of his answer he denies the execution by Nannie M. Rush and Geo. S. Rush of the note and mortgage to Mrs. Dunmyer, and denies that Mrs. Rush had any title whatever in the lands in controversy at the time of the institution of this action, or at any time prior thereto. In the third paragraph of his answer, by way of cross-petition, he alleges, in substance, that at the time of the execution by him of the deed to Harsin he was insane and without understanding, and that said deed was obtained from him by fraud of the said Harsin, Nannie M. Rush, and Geo. S. Rush, that said deed is void, and that the mortgage from Mrs. Rush and husband to plaintiff conveyed no lien and is invalid, and prays that said mortgage be canceled and his title quieted. Judg ment was rendered by the trial court in favor of plaintiff below.

On the trial the defendant in error, plaintiff below, demanded that all issues arising on the pleadings between her and defendant Maas be tried as equitable issues to the court, and defendant Maas demanded that all the issues formed by his answer be tried to a jury and that the jury return a general verdict therein. The court ordered that the issue as to the execution and delivery by Mrs. Rush and her husband of the note and mortgage, contained in the first and second paragraphs of defendant's answer, be submitted to the jury, and that the issue formed by the third paragraph of his answer, alleging in substance that he was insane at the time of the execution of the deed by him to Harsin, and that the same was executed without consideration and was void, and praying for the cancellation of said note and mortgage, and a decree quieting his title to said land be tried to the court. After evidence was introduced by both parties, the court directed the jury to return a verdict in favor of the plaintiff on the issues submitted to it by the court, and made findings of fact; and the court on the equitable issues found the issues of law in favor of the plaintiff, and rendered judgment in accordance therewith. The ruling of the court refusing to submit all the issues of fact of the case to the jury upon the request of defendant Maas is the first alleged error as-

signed by plaintiff in error and relied upon for reversal of this cause.

The statute governing what issue shall be submitted to a jury is as follows:

"Sec. 4453. Issues of law must be tried by the court, unless referred: issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

Section 4454 provides as follows:

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury, or referred as provided in this Code." (Wilson's Rev. & Ann. St. 1903, p. 1030).

These sections of the statutes, prior to their adoption from the state of Kansas by the Legislature of the territory of Oklahoma, had been frequently construed by the Supreme Court of that state. *Clemenson v. Chandler*, 4 Kan. 558; *Cavenaugh v. Fuller*, 9 Kan. 233; *Bradley v. Parkhurst*, 20 Kan. 462; *State Journal Co. v. Commonwealth*, 43 Kan. 93, 22 Pac. 982; *Morgan v. Field*, 35 Kan. 162, 10 Pac. 448; *Gillespie et al. v. Lovell et al.*, 7 Kan. 419; *Wiscomb v. Cubberly*, 51 Kan. 580, 33 Pac. 320. The issues in none of those cases, however, were exactly the same as the issues in the case at bar. The effect of the rule established in all of those cases is that, in a foreclosure proceeding where personal judgment for money is sought by plaintiff against defendant, the defendant is entitled to a jury trial, and that the equitable action of foreclosure is in such case converted into a legal action. The case at bar under the issues formed by the petition and defendant's answer containing his cross-petition is not alone an action for personal judgment for money and for judgment foreclosing the mortgage, but in addition thereto, it is sought to cancel a fraudulent mortgage, and to clear and quiet the title of defendant to the land in controversy.

*Morgan v. Field, supra,* was an action brought by Field against

the administrator of the estate of Dennis Morgan to recover upon a promissory note executed by Dennis Morgan in his lifetime, and to foreclose a mortgage given at the same time upon a certain 80 acres of land to secure the payment of the note. P. J. Morgan claimed some right or interest in the premises and was made a party defendant, just as Maas was in the case at bar. P. J. Morgan filed his separate answer, alleging that he was the owner in fee simple of the 80 acres of land in controversy; that his title was derived from a conveyance from Dennis Morgan to John G. Spivy, and from John G. Spivy and wife to himself. The court states the issues, and applies the rule in the following language:

"The administrator of the estate of Dennis Morgan, deceased, made default. And the plaintiff in error did not deny the execution of the promissory note, nor question the right of the defendant in error to recover the amount claimed by him. The pleadings, therefore, admitted the allegations respecting the promissory note, and the right of defendant in error to recover judgment for the amount claimed, and left nothing to be tried except his right to have the mortgage foreclosed, and the lands sold in satisfaction of his claim. The issues joined between the defendant in error and P. J. Morgan were therefore purely equitable in their character, upon which a jury trial cannot be demanded as a matter of right."

The holding of the court in this opinion is that, if by the pleadings in a foreclosure action the legal issues are disposed of and only equitable issues remain to be disposed of, defendant is not entitled as a matter of right to a trial by jury on such issues.

The difference in the issues in the case at bar from the issues in the case of *Morgan v. Field, supra,* is that defendant Maas in this case, unlike the defendant P. J. Morgan in that case, denied the execution of the note and mortgage sued upon, and the right of plaintiff to recover a money judgment against his codefendants, Mrs. Rush and her husband. While the record does not disclose whether the case of *Morgan v. Field* was brought to the attention of the learned trial court, the trial court, by ruling that the issue as to the execution and delivery of the note and mortgage

should be submitted to the jury, recognized the right of defendant indicated by the language of that opinion.

The question for our consideration is whether the court erred in refusing to submit to the jury the issue presented by the cross-petition of defendant Maas as contained in paragraph 3 of his answer, by which he seeks to have declared void and canceled the mortgage which plaintiff seeks to foreclose. If defendant Maas had proceeded no farther in his answer than to deny that his co-defendants, Mrs. Rush, and her husband, executed the note and mortgage, or that they had any interest in the land at the time of the execution of said mortgage or subsequent thereto, we think his demand for a jury trial upon all the issues should have been granted; but he has sought in this action by his cross-petition to set up a cause of action against plaintiff, and has sought an affirmative relief that only a court of equity could hear and give. It is well settled that, where the issues raised by a cross-petition are of an equitable character, they may be tried by the court in its discretion as in ordinary equitable cases, and that a trial by jury does not exist as to such issues as a matter of right to defendant. 11 Ency. Plead. & Prac. 622.

*Fish v. Benson et al.,* 71 Cal. 428, 12 Pac. 454, is an action similar to the case at bar. It was an action in ejectment, and defendants were entitled to a jury trial as a matter of right on the issues raised by the allegations of the ejectment petition, but defendants, in addition to a general denial, filed a cross-petition, alleging that the defendant Benson was in 1881 seised of the fee title in the premises; that he was at said time old and suffering from mental weakness, all of which was known to J. C. Beatty, C. F Jones, and others who, with the view to defraud him, combined and conspired to mislead and cheat him by numerous acts of fraud specifically set out and mentioned in the answer. The defendants in their cross-petition alleged that Benson conveyed to one Beatty and Beatty to one Jones and Jones to the plaintiffs in the action, that plaintiffs purchased with notice of the fraudulent acts of the grantees of Benson, and they prayed that the deed executed by the gran-

tees of Benson and by him to his grantees be canceled. Defendants demanded a jury trial on all of the issues. The trial court separated the two causes of action, and tried the issues presented under the cross-petition as an equitable issue to the court, which action of the court was assigned as error on appeal to the Supreme Court of California. The Supreme Court sustained the action of the trial court, and in a very able and exhaustive opinion, after citing numerous authorities, used the following language:

"The cross-complaint states facts which, if true, constitute a cause of action of which a court of equity has jurisdiction, and the relief sought is such as can only be obtained in equity. It was entirely distinct from the action in ejectment; and, if successful, would result in divesting the plaintiffs of their legal title. Being an action cognizable in equity, and distinct from the legal action, it was the duty of the court below to first determine the issues involved under the cross-complaint, for the reason that, if the defendant succeeded in their issues, it would defeat the right of plaintiffs to recover in their action at law, however perfect their legal right."

In the case at bar the cause of action alleged by defendant Maas in his cross-petition is one purely of an equitable nature, which, if set up by him in a petition in an independent action, would not have entitled him to a trial by jury. The court submitted the legal issues in the case to a jury, which under the court's instruction returned a verdict thereon against defendant, and the equitable issues raised by his cross-petition were tried to the court, which was not error. The power of the court in cases, where by the pleadings both legal and equitable issues are presented, to separate the legal issues and submit them to a jury, and to try the equitable issues to the court, is ably discussed and the authorities reviewed in the following cases: *Swasey v. Adair,* 88 Cal. 179, 25 Pac. 1119; *Carlin v. Donegan,* 15 Kan. 496; *Woodman v. Davis,* 32 Kan. 344, 4 Pac. 262.

The trial court in his findings found: That on the 22d day of July, 1902, defendant John Maas was the owner in fee of the S. E. ¼ of section 31, township 18 N., range 2 E., in Payne coun-

ty. That on said day said Maas, by warranty deed, conveyed the same to John J. Harsin, and said Harsin on the same day conveyed the same to Nannie M. Rush. On the 1st day of August, 1902, Nannie M. Rush and Geo. S. Rush, her husband, executed to the plaintiff, Mary E. Dunmyer, their promissory note in the sum of $1,200, due in five years, with interest from date at the rate of 7½ per cent. per annum, payable semiannually. That by the provisions of said note, if default was made in the payment of any interest when due, at the option of the holder of the same, said note might be declared due by the holder. That Nannie M. Rush and Geo. S. Rush, her husband, on the 1st day of August, 1902, executed to the plaintiff, Mary E. Dunmyer, a mortgage upon said above-described land to secure the payment of said note, which mortgage was duly acknowledged by the mortgagors and filed for record in the office of the register of deeds in Payne county on the 2d day of August, 1902. He further found that, after the execution of said mortgage, John Maas brought an action in the district court of Payne county against Nannie M. Rush and her husband, Geo. S. Rush, John J. Harsin, and Vincent Harsin to set aside the deed from Maas to John J. Harsin, and also the deed from John J. Harsin to Nannie M. Rush, and that in said suit the court rendered judgment in favor of the said John Maas and canceled said deed and reinvested the title to said land in John Maas, that said decree had become final and absolute, and that at the time of the trial of the cause John Maas was the owner in fee of said land. The court further found that Nannie M. Rush was the owner in fee of the land in controversy at the time of the execution of the mortgage to plaintiff. He found that at the time of the execution of the deed by John Maas to John J. Harsin, conveying the land in question, the said John Maas was a person of weak mind, below the average of normal persons, and was classed as the highest order of imbecile, but was not entirely without understanding, and that he was able to comprehend the ordinary affairs of life and transact ordinary business affairs; that this mental condition had existed from his childhood, but that Mary E. Dunmyer at the

time of the execution and delivery of the note and mortgage sued upon had no knowledge of the mental condition of the said Maas at the time he executed the deed to John J. Harsin, and that at said time she had no knowledge of his mental condition previous to that time; that she is an innocent incumbrancer for value without any notice of the fraud perpetrated by John J. Harsin, Geo. S. Rush, and others upon defendant John Maas at the time they procured the title to said land to be conveyed by John Maas to John J. Harsin and from John J. Harsin to Nannie M. Rush. There was no finding by the court as to whether Nannie M. Rush was a purchaser for value, nor is there any evidence in the record upon which to make findings upon this question, except the judgment in the case brought by Maas to set aside and have canceled the deed from him to Harsin and from Harsin to Nannie M. Rush, to which action Mary E. Dunmyer was not a party, and therefore the facts recited in that judgment are not competent as evidence in the case at bar. The court further found that plaintiff's mortgage in the sum secured thereby is a valid and existing lien against said land; that default had been made in the payment of the interest, and that plaintiff was entitled to recover from the defendants Nannie M. Rush and Geo. S. Rush the sum of $1,695, and entitled to have said mortgage foreclosed as against the defendant John Maas, and said land sold to satisfy the amount of said judgment, interest, attorney's fees, and cost.

Plaintiff in error insists that the findings of the court are not supported by the evidence, and particularly complains that the evidence is not sufficient to support the finding of the court that Maas, while a person of unsound mind, was not wholly without understanding at the time he executed the deed to Harsin. The record of the evidence in this case is very voluminous, and has been read and re-read by us with the utmost care and attention, but we shall not undertake to discuss the same in detail, as it would serve no useful purpose to do so. There is evidence fairly tending to support all the findings of the court, and, upon the condition of defendant Maas' mind at the time of the execution of

the deed by him to Harsin, the evidence is abundant to establish the findings of the court. In fact, practically all of the testimony of the numerous witnesses introduced was to the effect that Maas was mentally unsound, but he was not entirely without understanding; that he was capable of transacting the ordinary business of a farmer, and he had for years transacted his business with some degree of thrift. There is evidence that upon some subjects, particularly upon the subject of marriage, his mind was very much unbalanced, but the evidence clearly establishes that he was not totally without understanding. It is insisted by plaintiff in error that the deed from Maas to Harsin was void, and that Harsin obtained no title or interest whatever in the land in controversy, and that, therefore, Mrs. Rush acquired no interest therein by her deed from Harsin, and that her mortgage to plaintiff in error conveyed no right or interest whatever to plaintiff in error, and was ineffective for the purpose of creating any lien upon the land described therein.

The contentions of plaintiff in error and of defendant in error may be briefly distinguished as follows: The contention of the former is that the deed of a person of an unsound mind is void, and of the latter that it is at most only voidable. We shall not undertake a lengthy review of the authorities from courts not controlled by statute upon this question. Those interested in the question may find a very able discussion of the same and very full citation of authorities thereon in *French Lumbering Co. v. Theriault*, 107 Wis. 627, 83 N. W. 927, 51 L. R. A. 910, 81 Am. St. Rep. 856, in which case the court held that a deed made by an insane person not under guardianship is voidable only, and that such deed passes title to the grantees and conveys seisin. This opinion we believe to be in harmony with the great weight of American authorities. Devlin on Deeds, par. 73. The contract in the case at bar is controlled by our statute which is declaratory of the common law. By Rev. Codes N. D. 1899, §§ 2512-2519-2520 (Wilson's Rev. & Ann. St. Okla. 1903, § 733), it is provided:

"Persons of unsound mind within the meaning of this code, are idiots, lunatics, and imbeciles."

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary to his support or the support of his family."

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission as provided in the chapter of rescission of this Code."

The language of those sections, when applied to the facts found by the court in this case, clearly determines the status of the deed from Maas to Harsin to be not void, but voidable only. Section 827 of Wilson's Revised and Annotated Statutes provides for the rescission of contracts in the following language:

"Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules: First, he must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability, and is aware of his right to rescind; and, second, he must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

In the case at bar Mary E. Dunmyer, being an innocent incumbrancer in good faith for value, without notice of the mental incapacity of Maas, has the same right, to the extent of the sum secured by her mortgage, as an innocent purchaser for value.

The case of *Odom et al. v. Riddick et al.,* 104 N. C. 515, 10 S. E. 609, 7 L. R. A. 118, 17 Am. St. Rep. 686, is somewhat similar to the case at bar. That action was brought by the heirs of Oliver Odom to have a deed from him to his brother Richard declared null and void. Richard Odom had subsequent to the conveyance to him, and prior to the beginning of the action, conveyed the land to the defendant, Riddick. The trial court held that, before the deed could be avoided, the heirs must first repay to Riddick the

purchase price of the land paid by him, and the Supreme Court in affirming the judgment of the trial court used the following language:

"We do not see that the condition of the defendant is any worse because they bought mediately, and not immediately. The presumption of law is in favor of sanity; and this presumption is so strong that, when a want of it is claimed, even in capital cases, the burden is on the defendant to prove it; the presumption of sanity being stronger than the presumption of innocence. When, therefore, a purchaser sees a regular chain of title, formal in all particulars upon the registration books, executed by grantors of full age, and not *femes covert*, he has a right to rely upon the presumption of sanity; and if, without any notice or matter to put him upon inquiry, and for full value, he takes a deed, he should be protected. Any other doctrine would place all titles upon the hazard. If the title of an innocent purchaser for value, and without notice, can be upset for the alleged mental incapacity of one grantor, it may be shown, though the grantor may have been a very remote one. The evidence must necessarily be sought among those friendly to the heirs of such grantor—the neighbors and acquaintances of the party of alleged incapacity—and it would be difficult for the grantee in possession to furnish proof of the sanity of every grantor through whom he claims. Every man who shows the abnormal condition of mind which incapacitates him to make a conveyance of his property is sure to attract the attention of those around him who have the power and sometimes exercise it to conceal the fact. It is a safer rule to require his heirs and those acting for them to take prompt steps to have the deed set aside and the parties placed in *statu quo* before the property is conveyed to other parties and while the facts are capable of full investigation, than to subject a remote grantee to maintain the integrity of his title by rebutting the allegations of incapacity of any one in the line of grantors."

Another interesting case where the same subject is discussed is *Ashcraft v. De Armond* et al., 44 Iowa, 229, in which case the person against whom the action was brought had knowledge of the unsound condition of the mind of the original grantor and of the fraud practiced in obtaining the deed from him, but he acquired his title from an innocent purchaser for value, and the court held

that he stood in the place of the innocent purchaser for value, notwithstanding his notice of the fraud and the want of capacity in the original grantor.

While there is not an absence of authorities to the contrary, we believe the great weight of authorities of the American courts is to the effect that a conveyance of land made by an insane vendor without fraud or notice to the vendee of the unsound mental condition of the vendor, and for fair consideration, will not be set aside at the instance of the vendor or his heirs, unless the vendee be placed in *statu quo*. Buswell on Insanity, § 413, and the authorities there cited; *Gribben, Guardian, v. Maxwell,* 34 Kan. 8. 7 Pac. 584, 55 Am. Rep. 233. Some courts have gone farther; and held that where the vendor or his representative cannot put the vendee in *statu quo,* where there was no notice to the vendee of the vendor's mental incapacity, the court will not set aside the contract at all. *Yauger v. Skinner,* 14 N. J. Eq. 389; *Neill v. Morley,* 9 Ves. Jr. 478. In the case at bar Maas, although a person of unsound mind, but not being entirely without understanding, conveyed by his deed to Harsin the title to the land, which, in turn, was conveyed by Harsin to Mrs. Rush, who by her mortgage to plaintiff created a lien thereon in favor of the plaintiff, to secure the payment of the note sued upon in this action, and plaintiff, being an innocent incumbrancer for value, obtained by the mortgage a valid lien upon the lands in question, and is entitled to have the same foreclosed and the proceeds from the sale of the land applied in payment of said note; and it follows that defendant is not entitled to a cancellation of the mortgage without placing plaintiff in *statu quo,* which he has not offered to do.

During the progress of the trial, defendant introduced in evidence the deposition of one C. D. Field. One of the questions propounded to C. D. Field by defendant was, "State what, if anything, you have heard regarding this man Maas, his mental condition"— which was objected to by plaintiff, and the objection was sustained by the court. This action of the court is assigned and relied upon by plaintiff in error as one of the reversible errors in this action.

He contends that the question was admissible not for the purpose of establishing the mental condition of Maas, but for the purpose of proving plaintiff's knowledge of his mental condition at the time the mortgage was executed by Mrs. Rush. Plaintiff in error insists that Field was the agent of plaintiff in error. We have carefully reviewed the testimony upon this question, and we are unable to find any testimony that will warrant the conclusion that Field was ever the agent of plaintiff. There is testimony to the effect that Rush and Harsin, after they had obtained the deed from Maas, went to Field to ascertain where they could obtain a loan upon the land. and that he had referred them to one Brown, who acted as the agent of plaintiff in making the loan, and it appears that after the loan had been consummated Brown paid to Field a small sum of money for having brought to him the application for the loan, but there is nothing in the record that the sum of money paid was paid by the plaintiff, or that she ever had any knowledge of such payment, nor is there any evidence that Brown was authorized by plaintiff to employ agents for her, and it appears that the money paid by Brown to Field was paid out of Brown's commission. These facts would not constitute Field an agent of the plaintiff in the transaction.

After a careful review of the record in this case, we are unable to find any reversible error, and the judgment of the trial court is affirmed.

All the Justices concur.