**STUART et al. v. MAYBERRY et al.**

**THOMPSON et al. v. SAME.**

Nos. 14029, 14030, Consolidated—Opinion

Filed Oct. 21, 1924.

Rehearing Denied Dec. 16, 1924.

**1. Appeal and Error—Review of Equity Case—Sufficiency of Evidence.**

In an equitable action to cancel certain deeds, executed by an alleged mental incompetent, the presumption is in favor of the correctness of the judgment of the trial court, and where said judgment is not clearly against the weight of the evidence, as in the instant case, the judgment will be affirmed by this court on appeal.

**2. Same—Cancellation of Deed for Mental Incapacity.**

Where the evidence shows a grantor in a deed to lands to be wholly irresponsible and incapable of understanding the nature and effect of his act or the nature of the transaction and without any conception of the value of the property conveyed and the consideration is inadequate to support the conveyance, the judgment of the trial court, cancelling the conveyance, will be sustained by this court.

**3. Appeal and Error—Presumption—Pleadings—Amendment Regarded as Made**

Where the amendment of a petition, which ought to have been allowed, if leave to make it had been asked in the trial court, to conform it to the evidence adduced, without objection. the amendment will be regarded in the Supreme Court as having been made.

**4. Deeds—Duress Invalidating—Arrest—Illegal Process.**

Writs and processes from the courts of one state can have no force beyond the territorial boundaries of that state, and no force within the territorial boundaries of any other state. The arrest of Henry Mayberry, in the state of Kansas, by the deputy sheriff of Wagoner county, Okla., under a warrant from the district court of Wagoner county, Okla.. was unlawful, and constituted duress. as defined by the statutes of this state.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Henry Mayberry against I. O. Stuart and O. H. Ruble, and J. W. Thompson, J. E. Bruin, and Irene E. Upton, to set aside and cancel certain deeds to real estate. Judgment for plaintiff. Defendants bring error. Affirmed.

Biddison & Campbell, for plaintiffs in error I. O. Stuart and O. H. Ruble.

Hughes, Foster & Ellinghausen, for plaintiffs in error J. W. Thompson, J. E. Bruin, and Irene E. Upton.

Watts & Watts and E. J. Broaddus, for defendant in error.

Opinion by THOMPSON, C. This is an appeal by I. O. Stuart, O. H. Ruble, J. W. Thompson, J. E. Bruin, and Irene E. Upton from a judgment of the district court of Tulsa county, Okla., in favor of Henry Mayberry, setting aside certain deeds executed by Henry Mayberry to I. O. Stuart and O. H. Ruble, and by Henry Mayberry to J. W. Thompson, J. E. Bruin, and Irene E. Upton to Henry Mayberry's allotment in the Creek Nation ·as a Creek freedman, consisting of 160 acres, on the grounds of fraud and incompetency, there being two separate appeals numbered 14029 and 14030, on the docket of this court, but being submitted to this court for a decision upon the one record.

Henry Mayberry filed his action against I. O. Stuart and O. H. Ruble and several other defendants, whose rights were determined in the lower court either by the judgment or by disclaimer, and only the defendants above named, Stuart and Ruble, and Thompson, Bruin and Upton, interpleaders, appeal.

The pleadings and record disclose that Henry Mayberry was a illiterate negro boy, who, before arriving at his majority, made numerous deeds and contracts concerning his lands for very small amounts to various parties, and his guardian filed action in the district court of Tulsa county to set aside all deeds and contracts executed by him before he arrived at his majority. He was under bond to answer for a criminal offense in the district court of Wagoner county, and had employed counsel to defend him, and designing parties, under the pretense of protecting him from grafters, procured him to go away with them to Ohio. paying his expenses, with a view to securing his lands from him when he arrived at the age of 21. From Ohio they carried him to the state of Illinois, where his mother, Gertie

Peterson, located him, and had the parties who had him in charge arrested. She then took him in charge and brought him back to Wichita, Kan., where, at about two or three o'clock in the morning, on the 7th of February, 1921, the date he arrived at the age of 21, she took a deed from him, without paying any consideration therefor, in order to protect him from designing persons, who were attempting to secure deeds to his allotment. At about seven o'clock in the morning of the same day, the defendants, I. O. Stuart and O. H. Ruble, in company with J. W. Ruble, a deputy sheriff of Wagoner county, who was a brother of O. H. Ruble, arrived in Wichita, and J. W. Ruble, without assistance from any Kansas officer, arrested Henry Mayberry, under a bench warrant issued out of the Wagoner county court, and took him to a hotel, at which place O. H. Ruble and I. O. Stuart secured a written contract and deed from Henry Mayberry, paying him therefor the sum of $100, and promising to pay a balance of $15,000 when title was cleared to the land, which was then producing oil, and the contract assigned all the oil in the pipe lines, which amounted to a considerable sum. The land was valued by the different witnesses from $15,000 to $45,000. They further agreed in the contract to make a bond and keep him out of jail, to secure an accounting from his former guardian, and to have the criminal action against him taken care of. The copy of the written contract given to Henry Mayberry was taken away from him on the way from Wichita, Kan., to Wagoner, Okla., by the deputy sheriff, and never returned to him. On his return to Wagoner, the attorneys employed by him and his mother had the bond forfeiture set aside and the cause dismissed on the payment of $62.50, which amount was paid by Stuart and Ruble. Stuart and Ruble never procured an accounting from the former guardian. On the 10th day of February, 1921, action was brought by Henry Mayberry, in the district court of Tulsa county, to set aside the Stuart and Ruble deed, and to set aside the deeds of Gertie Peterson and others. On the 23rd day of February, 1921, a petition was filed in the county court of Wagoner county, asking that Henry Mayberry be declared mentally incompetent, and for the appointment of a guardian, and on the 7th day of March, 1921, proceedings were filed in the county court of Muskogee county for an order declaring Henry Mayberry mentally incompetent, and for the appointment of a guardian. On the 16th day of March, 1921, the county court of Muskogee county made its order, declaring the said Henry Mayberry mentally

incompetent, and appointed M. G. Young and P. E. Reed guardians, which order was never appealed from, and on the 29th day of March, 1921, the county court of Wagoner county by its order declared Henry Mayberry an incompetent, and appointed P. E. Reed and J. C. Casaver guardians, which order of the county court of Wagoner county was appealed to the district court and was set aside, and on rehearing the county court of Wagoner county again found Henry Mayberry to be an incompetent and appointed Omer H. Ellington and S. S. Cobb as guardians, which order was appealed from, and on December 5, 1921, the district court found said Henry Mayberry to be an incompetent, and sustained the order of the county court of June 7th. There seemed to be some controversy over whether Henry Mayberry resided in Wagoner or Muskogee county, and which county court had jurisdiction. The record shows that the decision of the Wagoner court was appealed to this court. The proceedings of the Muskogee court and the Wagoner courts, on the question of the incompetency of Henry Mayberry, were not admitted, and the plaintiff reserved an exception to the exclusion of these records, which appear in the record as testimony offered and rejected. The Muskogee county court proceedings were competent as against Thompson, Bruin, and Upton as the order antedated their deed.

While the two actions were pending in the district court of Tulsa county for the cancellation of the deeds, given prior to the time that Henry Mayberry arrived at full age, and for the cancellation of the deeds to Gertie Peterson, Stuart, and Ruble, and others, and after the final order of the Muskogee county court had been made, declaring Henry Mayberry an incompetent, and guardians appointed for him, J. W. Thompson, J. E. Bruin, and Irene E. Upton secured a deed from Henry Mayberry, his mother. Gertie Peterson, and her husband to 80 acres of the lands in controversy, being the oil producing land owned by the plaintiff, for the sum of $8,000, paying $2,000 down at the time of the transaction, and agreeing to pay the balance when the title was cleared. The balance of the allotment, exclusive of the above 80 acres conveyed to Thompson, Bruin, and Upton, is shown by the record to have been worth about $1,500, and that the said Thompson, Bruin, and Upton paid in all to Henry Mayberry and his mother the sum of $4,375 upon this contract, and the last above parties came into this case by way of interplea, and in their pleadings they allege that the consideration of

$15,000, agreed to be paid by I. O. Stuart and O. H. Ruble, was an inadequate consideration; that the property was worth at least $16,000; that it was valuable for oil and gas mining purposes, and that it was producing oil in large quantities.

The evidence shows that Henry Mayberry was a wholly irresponsible negro boy, easily led and easily imposed upon, and easily moulded "like clay in the potter's hands;" that he would make a deed or contract for his land to anyone who would pay him anywhere from $50 to $100, and that he had made numerous and sundry deeds and contracts, both before and after he arrived at his majority, to these lands for these small amounts. P. E. Reed, who was his legal guardian before he arrived at his majority, testified that Henry Mayberry had no knowledge of the values of anything, either before or after he reached his majority, and that he would do about anything he was asked to do, except mind his mother and go to school, and his mother, Gertie Peterson, testified that while he was not crazy yet he did not have the sense that he should have. Henry Mayberry appeared before the trial court, himself, as a witness in this case, and testified that he had given several deeds and when asked, "Did you sell them the entire allotment for $50," he answered, "No, I just gave them a deed to it." He also testified that he did not know anything about it being oil producing land and was not told about it, that he knew nothing about the terms of the transaction with Thompson, Bruin, and Upton as it was negotiated entirely with his mother. O. H. Ruble, testifying in his own behalf, stated that he knew that Henry Mayberry was an incompetent to some extent. I. O. Stuart also testified that Henry Mayberry's intelligence was lower than that of any white boy of the same age.

This record and this testimony being before the court, and the deeds, taken under the conditions that they were, while all these different actions were pending in the different courts, and the trial court, having the boy personally testifying before him, pronounced judgment in favor of the plaintiff setting aside the deed to Sam Silber, on the grounds that the consideration of $20,000 agreed to be paid was an inadequate consideration, and that said Henry Mayberry was an incompetent at the date of the execution of the deed, from which judgment Silber did not appeal, and set aside the deed from Henry Mayberry to I. O. Stuart and O. H. Ruble, on the grounds that Henry Mayberry was under duress and undue influence, and that said I. O. Stuart, O. H. Ruble, and J. W. Ruble, the deputy sheriff, had entered into a conbination to cheat and beat the said Henry Mayberry out of his land, and that the consideration was inadequate to support the conveyance, and that said Henry Mayberry was an incompetent at the time of the execution of said deed. The court set aside the deed of Gertie Peterson and also the deed from Henry Mayberry, Gertie Peterson, and Tom Peterson to J. W. Thompson, J. E. Bruin, and Irene E. Upton, but decreed, by consent of the parties, as shown by the pleadings, that J. W. Thompson, J. E. Bruin, and Irene E. Upton should have judgment against Henry Mayberry for the sum of $4,375, the amount paid by them, with six per cent. interest from the 21st day of April, 1922, and that they should have a lien upon the land for the payment of said amount and interest, and if said amount were not paid within six months from the 21st day of April, 1922, ordered a foreclosure of said lien and sale of the lands in satisfaction of the judgment.

The rule to be applied here is a universal rule adopted by this court, that in a case of purely equitable cognizance, triable to the court without the intervention of a jury, if this court finds that the judgment of the lower court is not clearly against the weight of the evidence, the judgment of the trial court will not be disturbed on appeal. The record clearly shows that this negro boy, who had just reached his majority, was totally irresponsible, and did not have the ability to understand the nature and effect of the act in making the several deeds, both before and after reaching his majority, and that he was incapable of comprehending that the effect of the deed, after it was made, executed, and delivered, would be to divest him of the title to the land set forth in the deed. As heretofore set forth in the review of the record in this case, this plaintiff would do anything that he was asked to do, that he knew absolutely nothing about the value of this land or of anything else, that he had no conception of what it was producing in oil and gas, while the parties he dealt with were shrewd land men and had full knowledge of the value of the land. In the case of Stuart and Ruble it must be held by this court that all the circumstances show that there must have been some understanding between J. W. Ruble and his brother, O. H. Ruble, and I. O. Stuart, as they went with him on the same train from Wagoner, Okla., to Wichita, Kan., and that said deputy sheriff, J. W. Ruble, made the arrest without any assistance from the of-

ficers in Kansas, under a bench warrant from the district court of Wagoner county, and he cannot be held to have had any extra-territorial right or legal power to make the arrest in the state of Kansas under said writ, and while, as contended by counsel for Stuart and Ruble, there was no special allegation of duress, yet evidence was taken on both sides of this question of his arrest without objection, and it was tried to the court upon this theory as the court found in his findings that he was under duress and this court, in numerous cases, has held:

"Where the amendment of a petition, which ought to have been allowed, if leave to make it had been asked in the trial court, to conform it to the evidence adduced, without objection, the amendment will be regarded in the Supreme Court as having been made." Bettie Mason et al. v. C. M. Slonecker, 92 Okla. 227, 219 Pac. 357; Harn et al. v. Patterson, 58 Okla. 694, 160 Pac. 924; Carson v. Butt, 4 Okla. 133, 46 Pac. 596; First Nat'l Bank of Mill Creek v. Langston, 32 Okla. 795, 134 Pac. 308; Love v. Kirkbride Drilling & Oil Co., 37 Okla. 804, 129 Pac. 858.

It is further plain from the record that Stuart and Ruble were fully advised as to the value of this land, and the conditions surrounding it, and they only made a down payment of $100, and promised to keep him out of jail by going on his bond and performing other services, as heretofore recited in this opinion, which were never performed by them, other than making bond and the payment of the further sum of $62.50 on the bond forfeiture. A copy of the written contract that was given to the boy by them was taken away from him by the brother of Ruble, and never returned to him, and the boy testified that he knew nothing about what the contents of that contract were, and that he did not know he assigned his royalty to them, and we think, under this evidence and all the circumstances surrounding this transaction with the boy, that the court was clearly right in its finding that said deed should be set aside on the grounds that it was obtained under duress and undue influence, and with a complete understanding between Stuart and Ruble and the deputy sheriff, J. W. Ruble, to beat and cheat the boy out of his land, and that the consideration was wholly inadequate to support the conveyance, and, as ordered by the court, the deed should be canceled, set aside and held for naught, and we are of the opinion that Henry Mayberry was wholly incompetent to make said deed, even under the cases of Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185, and Long v. Anderson, 77 Okla. 95, 186 Pac. 944, cited and relied upon by counsel for defendants Stuart and Ruble in their brief.

In the case of Thompson, Bruin, and Upton, under their own pleadings, they were only to pay $8,000 for this land, which was wholly an inadequate consideration under their own admission in the interplea, in which they alleged that the consideration agreed to be paid by Stuart and Ruble of $15,000 was wholly inadequate to support the conveyance, and alleged that the land was at least worth $16 000, and was valuable for oil and gas, and they were fully informed of all the court proceedings, or by due diligence they could have been so informed, and they knew at the time that there were two actions pending in the district court of Tulsa county to set aside numerous deeds and claims of other parties to this land on the grounds of the incompetency of Mayberry, and on the 23rd day of March, the day their deed was taken, this boy was under guardianship under an order of court, declaring him to be an incompetent, made by the county court of Muskogee county, which was final and unappealed from, and while another action was pending in the Wagoner county court, petitioning the court to declare him mentally incompetent. These interpleaders, both in the trial court and here, seemed to rely upon the deed of Henry Mayberry to his mother, Gertie Peterson, and all their dealings and contracts were made with Gertie Peterson, and payments were made to Gertie Peterson, and the boy was not consulted at all in the entire transaction. The deed of Gertie Peterson was properly canceled as having been given without consideration, and for the sole and only purpose of protecting him against grafters, and the judgment of the trial court was not appealed from in the case of Gertie Peterson. The record shows that the trial court permitted P. E. Reed and Milton Young, guardians appointed by the county court of Muskogee county, to be made parties in this action to prosecute the case in behalf of their ward, Henry Mayberry, and certain pleadings were filed by them, and the record further shows that under a petition of P. E. Reed, the Muskogee county guardian, and S. S. Cobb, the Wagoner county guardian, the trial court permitted G. L. Kirby and John C. Graves to be made parties to this action as guardians ad litem to Henry Mayberry.

In conclusion, we find that his former guardian testified that he was an incompetent: that his mother said he was an incompetent; Ruble said that he was incompetent to a certain extent; Stuart said that his intelligence was lower than that of a

white boy of his own age. The boy's own testimony shows that he did not know that he was selling his allotment for the small sums that he received. The number of contracts and conveyances this boy made for paltry sums show that he had no conception of the value of the property that he was conveying, and that he would make any kind of a deed or contract to the land that he was asked to make for $50 to $100, and, in the case of Thompson, Bruin, and Upton, Henry Mayberry had been declared a mental incompetent by the county court of Muskogee county, and a guardian appointed on the 16th day of March, 1921, seven days prior to the date of their deed. For further reason for sustaining this judgment, upon the proposition of incompetency, the trial court had Henry Mayberry on the witness stand, testifying in this cause, and had an opportunity to observe his actions and demeanor, and from this, as well as from the testimony he gave, the court was in a better position to determine this question than this court could possibly be by reading the cold wording and letter of the record here.

We are, therefore, of the opinion that the judgment of the lower court is not clearly against the weight of the evidence, but on the other hand it is fully sustained by the facts and circumstances surrounding this case. For the reasons, heretofore stated in this opinion, it is the opinion of this court that the judgment of the trial court, in all things, should be and is hereby affirmed.

By the Court: It is so ordered.