## JONES et al. v. MEAD et ux.

No. 12624—Opinion Filed March 17, 1925.

Rehearing Denied July 7, 1925.

**1. Appeal and Error — Review of Equity Case—Sufficiency of Evidence.**

In an equitable action. the presumption is in favor of the findings and judgment of the trial court, and same will not be set aside unless clearly against the weight of the evidence.

**2. Deeds — Lack of Mental Capacity in Grantor.**

In order to render a deed void upon the ground of insufficient mental capacity, it must be shown that the grantor not only did not understand the nature of the transaction, but also that he was without sufficient mental capacity to understand it.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County; Guy F. Nelson, Judge.

Action by Grant Mead et ux. against Helen Jones et al. Judgment for plaintiffs, and defendants appeal. Affirmed.

H. T. Walker and W. H. Dial, for plaintiffs in error.

John H. Mosier, Earl Bohannon, and De Thurston Mosier, for defendants in error.

Opinion by JONES, C. This action was instituted in the superior court of Muskogee county, Okla., by the defendants in error, as plaintiffs, against the plaintiffs in error, as defendants, in the trial court, wherein plaintiffs sought to quiet title to a certain tract of land, the allotment of Helen Jones, nee Thompson, a Creek freedman, and one of the appellants herein. It appears from the record that the said Helen Jones duly executed and delivered to R. P. Rutherford on July 26, 1917, a warranty deed, conveying to said Rutherford the lands in controversy. It also appears that T. G. W. Jones, the other appellant, and husband of Helen Jones, executed a war-

ranty deed to the same lands to J. D. Preston on August 8, 1917. Preston and wife subsequently made a conveyance by quitclaim deed to the said R. P. Rutherford, and on August 4, 1917, R. P. Rutherford and wife, by warranty deed duly executed and delivered, conveyed said lands to Grant Mead and Stella D. Mead, his wife, defendants in error. The deed executed by Helen Jones to Rutherford contained a recitation to the effect that the land conveyed was not the homestead of the said Helen Jones. Plaintiffs further allege that the defendants claimed some right, title, and interest in, and to said property, and that they are advised that the said Helen Jones at the time of the filing of this suit was an incompetent and confined in the insane asylum. To which petition the defendants filed their answer, and, after interposing a general denial, admit that the said Helen Jones is a Creek freedman, duly enrolled, and aver that defendants are now, and were at all times mentioned, the owners of the legal and equitable title to said property, and by way of cross-petition aver that the said Helen Jones was a person of unsound mind and without sufficient mental capacity to understand the nature and effect of her act in the execution of the purported warranty deed to the said Rutherford, and that such fact was well known to the said Rutherford at the time of the execution and delivery of the deed, and aver that no consideration passed for said deed, and that in July, 1919, the said Helen Jones was adjudged to be insane by the county court of Rogers county, and was admitted to the hospital for the insane at Norman, Okla. Defendants further aver that the land in question was the homestead of the said Helen Jones, and that the deed was invalid for that reason; pray for the cancellation of said deeds, and for damages for the wrongful detention of said land. To which answer the plaintiffs reply and generally deny all the matters set up as a defense to their cause of action; specifically deny that Helen Jones was of unsound mind and mentally incompetent of contracting at the time of the execution of the deed, and allege that a valuable and adequate consideration was paid, and that at the time these plaintiffs purchased said lands from R. P. Rutherford, they had no knowledge of any of the facts set up as a defense to their cause of action; had no notice of the consideration paid, or of the mental condition of said Helen Jones, and that they paid a good and valuable consideration for said lands and are innocent purchasers.

The matter was submitted to the court

without the intervention of a jury, and after the hearing of same the court made special findings of fact in which every phase of the case is covered, but we deem it only necessary to set forth the following findings:

"6. That the consideration for the deed, dated July 26, 1917, executed by Helen Jones to R. P. Rutherford was $3,200."

"9. That at the time of the conveyance by Helen Jones to R. P. Rutherford, to wit, July 26, 1917, none of the above described land was the homestead of the defendants or either of them."

"10. That at the date of the execution and delivery of the warranty deed by Helen Jones to R. P. Rutherford dated July 26, 1917, defendant, Helen Jones, was of unsound mind but not without understanding and at such date and time when she entered into the contract and made the warranty deed above mentioned she intended to and did convey said land for the consideration of $3,200, and at such time knew and understood the effect of such deed."

"12. That the plaintiffs (referring to the Meads) paid a valuable consideration to the said Rutherford for the conveyance of said land and were innocent purchasers thereof without knowledge or notice of the infirmities of mind of said Helen Jones."

And also found that the consideration paid was not grossly inadequate, being about eighty per cent. of its true value. And rendered judgment in favor of the plaintiffs quieting their title, from which judgment of the court the appellants prosecute this appeal, and assign numerous specifications of error, but we shall only discuss such assignments of error as are urged by the appellants in their brief.

The first proposition discussed is that Helen Jones at the time of the execution of the deed, July 26, 1917, was a person of unsound mind, and wholly without sufficient mental capacity to understand the nature and effect of her act. And this is the vital issue to be determined in this case. The evidence is conflicting, and the record discloses that a number of witnesses testified to certain acts and conduct on the part of Helen Jones which would indicate some mental derangement at various times, extending back to the year 1915, and we concur in the finding of the trial court to the effect that she was of unsound mind. This reduces the question to that of whether or not she had sufficient understanding at the time of the execution of the deed to know and comprehend the effect of her acts. The evidence tends to show that her mental condition had changed materially, that she would not engage in conversation with others, and would only answer questions

when directly propounded to her, and her husband testified that on one occasion, not long prior to the execution of the deed, she burned up some bed clothes, and the merchant from whom they purchased groceries and supplies testified that her husband always made out an itemized statement of groceries needed, and that frequently when buying the groceries she would forget them and leave them at the store, and on one occasion left her baby, a child about two years old, at the store, and two physicians who had attended her were of the opinion that she was of unsound mind, neither of whom had been called to see her for several months prior to the execution of the deed; and an alienist, in answer to a hypothetical question, stated that he would say that she was of unsound mind, and these facts coupled with the fact that she was adjudged to be of unsound mind about two years later conclusively establishes that fact, but the witnesses who were present, to wit, J. W. Stein, the real estate agent who purchased the land, and the attorney and notary public, all testified that at the time of the execution of the deed she seemed to thoroughly understand the effect of her acts, and explained to them that she had never lived on the land, that it was not her homestead, and the notary public, who was the stenographer in the lawyer's office where the deed was executed, testified that Helen Jones was in the office some three or four times immediately subsequent to the execution of the deed and discussed with the attorney concerning the institution of divorce proceedings, and did institute divorce proceedings, and afterwards withdrew same, and that at no time did she notice any acts or conduct on the part of the said Helen Jones which would indicate that she did not know and understand the nature and effect of the transaction which she discussed with the attorney.

The charge is made that the deed was obtained by fraud, and some effort is made to establish this fact, but in view of the state of the record, which discloses that Stein, who was negotiating the deal for the purchaser, was a stranger to Helen Jones, and the first knowledge that he had that she desired to sell the land in question was obtained from an advertisement which he saw, which had been placed in one of the Muskogee papers by Helen Jones, giving her name and address, and in response to this notice Stein called her over the telephone and was advised by her of the location of the land and the price, to wit, $35 per acre, and pursuant to this conversation Stein inspected the land, and subsequently

wrote Helen Jones a letter which appears in the record, in which he stated to her that he found it to be a thin piece of land, with ditches or gulleys through it, and that the improvements had been practically destroyed, and made an offer of $20 per acre. In response to this letter Helen Jones wrote him the day following, immediately, on the receipt of this letter, in which she stated she would not take less than $35 per acre, stated that the land was leased for oil, and that on account of crop failure she was compelled to sell it, and that if he would give her her price she would close at once. Some five or six days later she wrote another letter addressed to Mr. Stein in which she stated that she had decided to take the price he had offered, stating that the crop was short and that she was compelled to sell it, and asking him to come up right away and gave her street address. The charge is made that Stein was attempting to overreach her and that he discredited the land in his letter, calling attention to certain conditions that would tend to depreciate its value, but there is no evidence in the record tending to refute the statement made by Stein in his letter concerning the character and condition of the land.

The record discloses that the improvements had, in fact, been practically destroyed by a storm, and the evidence as to value ranged from $20 to $60 per acre. The said Stein when called as a witness testified among other things that at the time of the execution of the deed he requested the said Helen Jones to go with him to the office of Joe Chambers, an attorney in the city of Claremore, Chambers being the only attorney that Stein was acquainted with, but that she insisted that they go to the office of Mr. Holtzendorff and there is nothing contained in the record which indicates that the attorney who drew the deed, and the lady stenographer, who took the acknowledgment, had any knowledge or connection with the transaction, or interest therein, other than what they acquired at the time Helen Jones and Stein entered their office, which was necessary to enable them to draw the deed and properly execute the papers. And there is a total lack of evidence of any acts or conduct on the part of Helen Jones at the time of the execution of the deed or immediately prior thereto or immediately subsequent to the execution of the deed, that would indicate such a condition as would incapacitate her to execute the deed. This is a case which must largely be determined upon the facts, and is of such nature that it appeals to the

conscience of the court, and calls forth the most careful scrutiny, and if the record disclosed such a state of facts as would justify the court in setting aside the judgment of the trial court there would be no hesitancy in doing so, but we should follow the general and well-established rules of this court to the effect that the presumption is in favor of the findings of the trial court, and unless we can say, after a careful examination of the entire record, it is against the weight of the evidence, in cases of this character the judgment of the trial court should not be reversed on appeal. Parks v. Roach, 88 Okla. 19, 210 Pac. 402, and Johnson v. Johnson, 82 Okla. 259, 200 Pac. 204, and many authorities support this rule.

Section 889, Rev. Laws 1910, provides:

"A conveyance or other contract of a person of unsound mind but not entirely without understanding made before his incapacity has been judicially determined is subject to rescission without prejudice to the rights of third persons as provided in the article on extinction of contracts."

And under this provision contracts entered into by persons, although of unsound mind, but not entirely without understanding, are only voidable and not void.

In the case of Long et al. v. Anderson, 77 Okla. 95, 186 Pac. 944, in passing upon the section just quoted, the court said that:

"In order to render a deed void under this section on the ground of insufficient mental capacity it must be shown that the grantor not only did not understand the nature of the transaction, but also that he was without sufficient mental capacity to understand it."

In this case there is no evidence of the inability of the grantor to understand the nature of the deed she executed; the evidence of all the witnesses present at the time of its execution is to the contrary. And the fact that she advertised her land for sale, placed a price on it, directed the purchaser where and how to locate same, and conducted an intelligent correspondence concerning same, is indicative of a fair understanding of the nature and effect of the entire transaction. A discussion of this question will be found in 13 Cyc. 573, in Miller v. Fulsom, 49 Okla. 74, 149 Pac. 1185, Paulter v. Manual, 25 Okla. 59, 108 Pac. 749, Maas v. Dunmyer, 21 Okla. 434, 96 Pac. 591, and numerous other authorities cited.

The second proposition urged by appellant is the inadequacy of consideration. The court found the consideration paid to be 80

per cent. of the actual value of the lands, and we are inclined to the opinion that the evidence substantially sustains this finding. Appellant calls attention to the fact that the property was sold shortly afterwards for a profit of $1,200, and urges this as proof of inadequacy, but evidence of this kind is of but little weight, or potential force, and it cannot be determined from such evidence which of the parties, whether the one who buys the property and pays the profit, or the one who sold for a lesser consideration, is the incompetent, if either.

The third proposition urged is that Rutherford, through his agent, J. W. Stein, procured the deed from Helen Jones by fraud, and that the said Helen Jones was overreached, but this phase of the case has been heretofore discussed and as stated there is no evidence to support same. There is nothing to indicate that Rutherford had any knowledge of the mental capacity of Helen Jones or of the value of the land, and the first knowledge that Stein had concerning the sale of her lands was by reason of a notice given in a Muskogee paper by Helen Jones advertising her land for sale, and he, too, was a total stranger, and likewise the attorney and stenographer who assisted in drawing the deed and taking the acknowledgment were in no wise connected with the purchaser, and there is no evidence to indicate that any fraud was perpetrated.

The fourth proposition urged is that the court erred in sustaining objections to a certain line of testimony in that he refused to permit a number of the witnesses who testified to answer the questions propounded to them as to whether or not Helen Jones was of sound mind, and mentally competent to execute a deed. We think that the court was in error in excluding this evidence. It has been repeatedly held that any witness who had personal knowledge of the acts and conduct of the party may give their opinion as to whether or not the party is of sound mind, but in view of the fact that the witnesses were permitted to state all the facts that they knew concerning the mental condition of Helen Jones, and upon which they would necessarily base their conclusion or opinion, and as it appears to the court the facts which they testified to upon which they would base their conclusion, not being sufficient to justify the conclusions that she was mentally incompetent to execute a deed, or such as could justify the conclusion that she was without such understanding as would enable her to know the effect of her acts at the time of the execution of the deed, rendered the error complained of

harmless. Appellant contends that the consideration paid was inadequate, and that the land conveyed was the homestead, but there is no sufficient proof to justify such contention. We deem it unnecessary to discuss the question of innocent purchaser, having decided that the grantor was possessed of sufficient mental capacity to know the effect of her acts, which we think is decisive of the issues involved in this case, and we recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 900, § 2869: (2) 18 C. J. p. 218, § 131.