### GRIFFIN v. MAYS, Adm'r.

No. 27814.   July 5, 1938

Rehearing Denied Sept. 13, 1938.

Application for Leave to File Second Petition for Rehearing Denied
Sept. 27, 1938.

Speakman & Speakman and Kenneth G. Hughes, for plaintiff in error.

John R. Miller, L. O. Lytle, Roy T. Wildman, and Rex H. Anspaugh, for defendant in error.

CORN, J.   This is an appeal by plaintiff in error, defendant below, from a judgment of the district court of Creek county in an action brought by defendant in error, administrator of the estate of Joseph Mays, deceased, to cancel a deed.   The parties will hereafter be referred to as in the trial court.

Joseph Mays, a resident of Creek county, past 90 years of age and bedfast at the time, gave a deed, signed by mark and witnessed, conveying to defendant, his housekeeper and nurse, 160 acres of land on which were five producing oil wells.   The land was valued at from $15,000 to $18,000. Grantee placed this deed of record, and it was discovered by plaintiff after the death of his father, the grantor.

Plaintiff filed suit to cancel the deed, alleging in the petition that:   Grantor was affected with senile dementia and did not have mental capacity to understand the nature and purpose of his act; a fiduciary relationship existed between grantor and grantee and grantee had exercised undue influence over grantor in procuring this deed, and there was no consideration for the deed.

Defendant thereafter answered that:   Deceased was not mentally incapacitated or incompetent, or that deed had been procured by undue influence or misrepresentation, and set up a verbal agreement with deceased that if she would remain with him and care for him until his death, he would reward her with a home, and the deed was given pursuant to such agreement.   Plaintiff denied execution of the deed.

The trial court, after hearing the evidence, made findings of facts, the pertinent portion of such findings showing that:   (1) Deceased was afflicted with progressive senile dementia.   (2) He suffered a stroke of paralysis prior to death, which rendered him incapable of handling business transactions.   (3) He could not, physically and unassisted, make his mark upon the deed. (4) Defendant occupied a fiduciary relationship, and at time of making deed deceased was without independent advice, almost blind and his faculties weakened. (5) The deed was signed by the witnesses out of presence and hearing of the grantor.

Thereafter the court made conclusions of law that:   (1) The instrument was not executed according to law, and by reason of fiduciary relationship a heavy burden rested upon defendant to show she had not used this relationship to her own advantage, which burden defendant did not sustain.   (2) Deed conveyed no title to defendant, she acquired no interest thereby, and deed should be canceled.

The court then entered judgment decreeing title to this land to be in plaintiff and perpetually enjoined defendant from asserting any interest or claim therein.   Motion for new trial was overruled, and defendant appeals, making seven assignments of error, presented under eight subdivisions or propositions.

However, one question alone is decisive of this appeal.   Hence, for the sake of brevity, the only question discussed will be whether the evidence was sufficient to show the grantor did not have the capacity to execute this deed with knowledge and understanding of his act.

The facts surrounding the execution of

the deed were as follows: Defendant's attorney, a notary public, and two witnesses visited grantor's home. The attorney had a deed already prepared, from information previously given him. The testimony was that the attorney explained to the grantor they had a deed "to some property from you to Mrs. Griffin, to a farm out from Bristow," and asked him if he understood what it was, to which the grantor nodded his head. The grantor was handed a pen, but was too weak to hold it unassisted. Defendant also told grantor they had the papers and asked him if he was ready to fix them up for her.

Defendant then helped grantor make his mark by holding and moving his hand. The instrument was then witnessed by C. W. Pounders and B. M. Essary, but grantor's name was signed by Edna Gaye, who thereafter signed her own name. The deed was then signed by the witnesses out of the presence of the grantor.

The testimony regarding the grantor's mental capacity and condition was conflicting. The grantor's daughter testified her father had the mind of a child. Dr. Coppedge testified the grantor was afflicted with old age and general debility, his mind having deteriorated along with his body, and in his opinion the grantor's mind was in such condition he could not understand the nature and purpose of his acts. The cashier of a bank where the grantor had done business testified, from his knowledge gained by observation of grantor's attempted business activities up until about a year prior to his death, that in his opinion deceased did not have mental capacity to handle business affairs.

Other witnesses who had known the deceased for years as friends, neighbors, and visitors in his home, all testified they believed him unable to transact business affairs.

Conflicting with this was the defendant's evidence, consisting of testimony of persons who had known the deceased for varying periods of time. A carpenter, who had repaired a porch for deceased, testified he thought his mental condition good. A door-to-door salesman testified to calling on deceased and selling him certain articles he wanted.

Several other persons testified to deceased's ability to carry on apparently rational conversations regarding ordinary affairs. Others who professed to be acquainted with him testified to having heard deceased declare his intention to make provision for the defendant if she served him until his death.

The rule has often been announced by this court that the test of the grantor's ability to make a deed lies in his ability to understand the nature and effect of his act. In this connection the question always arises, in a suit to set aside a deed, whether the grantor was mentally incompetent at the time. See Jones v. Mead, 111 Okla. 16, 237 P. 445.

Cases too numerous to permit citation, involving this same problem of what degree of mental capacity a person must possess in order to avoid a deed for lack of competency, have been decided by this court. Paragraph 1 of the syllabus in Clark v. Sharum, 91 Okla. 273, 217 P. 445, holds as follows:

"Where the competency of the grantor is drawn into question in a suit for possession and to cancel deeds and quiet title, and the defense is based upon a deed or deeds regular in form and introduced in evidence, the presumption is in favor of the competency of the grantor and the burden is upon the plaintiff to show by a preponderance of the evidence the incompetency of the grantor to execute the deed or deeds, but if the trial court finds the issues in favor of the plaintiff and against the defendant in such a case, on appeal, the burden shifts to the defendant to point out clearly wherein the trial court erred in its findings, in order to overcome the presumption that the findings and judgment of the court are right."

In the case of Miller v. Folsom, 49 Okla. 74, 149 P. 1185, this court said:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed and delivered, would be to divest him of the title to the land set forth in the deed."

See, also, Keenan v. Scott, 99 Okla. 63, 225 P. 906.

In the case of First National Bank of Anadarko v. Orme, 125 Okla. 114, 256 P. 748, this court cites Miller v. Folsom, supra, and also quotes Jones v. Thompson, 5 Del. Ch. 374, and Doe ex dem. Guest v. Beeson, 2 (Houst.) Del. 246, stating, what this court considers the true rule to be, as follows:

"If from age, or disease, or the visitation of providence, or from any other cause, no

matter what, his mind was so unsound as to render him incapable of comprehending and understanding the nature and character of the act he was doing, and the consequences in respect to himself and the estate, * * * if consummated, would be to divest his estate and interest in the land, then we say to vou that he was of unsound mind, according to the legal significance of these terms, and the deed would be void on this ground."

In Allore v. Jewell, 94 U. S. 506, 24 L. Ed. 260, Mr. Justice Field said:

"The same doctrine is announced in adjudged cases, almost without number; and it may be stated as settled law that, whenever there is a great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside."

The facts in the case at bar are certainly within the applicability of the rules announced. The grantor, past 90 years of age, bedfast from recurrent paralytic strokes and unable to attend himself, is called upon to execute a deed, being told only that it was a deed "to a farm out here from Bristow." Unable to even hold the pen to make a mark, the defendant holds it for him and guides his hand, and the mark is made, purporting to convey to the defendant her-self probably the most valuable asset of the grantor's entire estate.

We have thoroughly considered the record, and are of the opinion the evidence is sufficient to sustain the trial court's judgment holding Joseph Mays was without capacity to comprehend the effect of his act.

This court held in Stuart v. Mayberry, 105 Okla. 13, 231 P. 491, in paragraph 1 of the syllabus:

"In an equitable action to cancel certain deeds, executed by an alleged mental incompetent, the presumption is in favor of the correctness of the judgment of the trial court, and where said judgment is not clearly against the weight of the evidence, as in the instant case, the judgment will be affirmed by this court on appeal."

It is a settled rule, supported by a multitude of decisions from this court, that in an equity proceeding the judgment or findings of the trial court will not be disturbed unless clearly against the weight of the evidence. Gillespie v. Dougherty, 179 Okla. 330, 65 P.2d 486; McClellan v. Smith, 180 Okla. 348, 68 P.2d 875; and Stevens v. Iverson, 179 Okla. 401, 66 P.2d 12.

Judgment of the trial court affirmed.

BAYLESS, V. C J., and RILEY. WELCH, PHELPS, and HURST, JJ., concur. OSBORN, C. J., and DAVISON, J., absent. GIBSON, J., not participating.